# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **JAMES BARRY MCCONNELL,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:12CV00005 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING** | ) | By:  James P. Jones |
| **COMMISSIONER OF SOCIAL** | ) | United States District Judge |
| **SECURITY,** [1] | ) | |
| | ) | |
| Defendant. | ) | |

*Joseph E. Wolfe, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Erica M. Perkins, Assistant Regional Counsel, and Rafael Melendez, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

I

Plaintiff James Barry McConnell filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act (the "Act"), 42

---

[1] Carolyn W. Colvin became the Acting Commissioner on February 14, 2013, and is substituted for Michael J. Astrue as the defendant in this suit pursuant to Fed. R. Civil P. 25(d).

U.S.C.A. §§ 401-34, 1381-83f (West 2012). Jurisdiction of this court exists under 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

McConnell protectively applied for benefits on August 10, 2007, alleging disability beginning December 31, 2006. His date last insured was March 31, 2008. His claim was denied initially and upon reconsideration. A hearing was held before an administrative law judge ("ALJ") on November 3, 2009, at which McConnell, represented by counsel, testified. The ALJ determined that additional medical evidence was necessary and continued the hearing to allow McConnell to obtain further examinations. A supplemental hearing was held on April 2, 2010, to consider the newly obtained evidence. At the supplemental hearing, McConnell, represented by counsel, a medical expert ("ME"), and a vocational expert ("VE") testified. On March 22, 2010, the ALJ issued a decision finding that McConnell could perform a modified range of light work and thus was not disabled under the Act. McConnell requested review by the Social Security Administration's Appeals Council. The Appeals Council denied his request for review, thereby making the ALJ's decision the final decision of the Commissioner. McConnell then filed the Complaint in this court seeking judicial review of the Commissioner's decision.

The parties have filed cross motions for summary judgment, which have been briefed. The case is now ripe for decision.

II

McConnell claims disability based on degenerative disc disease, blindness in his left eye, anxiety, and depression. Initially, he also alleged impairments related to his shoulder; arms; right hip, knee, and leg; a mass on his testicle; hypertension; and limited reading and writing abilities; however, he does not raise these issues on appeal. He is a high school graduate and previously worked as a survey helper and coal hauler. He was 49 years old on the date of the ALJ's decision, making him a younger individual under the regulations. *See* 20 C.F.R. §§ 404.1563(c); 416.963(c) (2012). The record indicates that McConnell has not engaged in substantial gainful activity since December 31, 2006.

McConnell collected unemployment benefits for approximately four months following the termination of his most recent employment. (R. at 42.) In order to obtain unemployment benefits, he was required to certify that he was ready, willing, and able to work. (R. at 42-43.) McConnell reported that he lives alone (R. at 299-300) though his parents live next door and help him as much as they can (R. at 52-55). He drives two to three times per week, cooks, washes dishes, mops and vacuums, walks to his parents' home to visit, prepares meals using a microwave, and pays bills. (R. at 283, 301.) In October 2007, McConnell reported that he could lift up to twenty pounds, could walk up to fifteen minutes at a time, and could resume walking after resting for thirty minutes. (R. at 305.) On another

form, however, McConnell reported that he could not bend, lift, or squat, and he could only walk around his house before needing to rest. (R. at 312.) He testified that he regularly uses a cane and sometimes uses a walker. (R. at 49-50.)

McConnell began seeing Patrick Molony, M.D., on February 23, 2007. Dr. Molony diagnosed McConnell with back pain in the lumbar spine, hypertension, and anxiety and prescribed Xanax and Lortab. (R. at 431.) Dr. Molony's notes do not reveal that he conducted any examination of McConnell, either physical or psychological. On May 15, 2007, McConnell requested that Dr. Molony increase his dosage of Lortab or prescribe Percocet instead. Dr. Molony declined to do so, noting, "I don't feel he needs Percocet." (*Id.*)

McConnell went to Lee Regional Medical Center on May 25, 2007, seeking treatment for his lower back pain. His physical examination was normal. (R. at 384-85.) Dalal Akoury, M.D., diagnosed McConnell with acute lumbosacral strain. (R. at 385.)

Kevin Blackwell, D.O., performed a consultative examination of McConnell on November 16, 2007. Dr. Blackwell noted that McConnell "[did] not appear to be in any acute distress" and had a "good mental status." (R. at 395.) While McConnell used a cane, Dr. Blackwell commented that "[h]e does not appear to put much weight on the cane." (*Id.*) A physical examination revealed tenderness in his lumbar musculature, knees, and shoulders. (*Id.*) Dr. Blackwell concluded

that McConnell would be able to sit for eight hours during an eight-hour workday and could stand for six hours out of an eight-hour workday, provided that he could change positions regularly. (R. at 396.)

McConnell returned to Lee Regional Medical Center on December 10, 2007, indicating that he had fallen while changing a tire, aggravating his back pain. (R. at 423.) Guy Clark, M.D., indicated that McConnell was "able to ambulate independently" and could "perform all activities of daily living without assistance." (R. at 427.) McConnell initially rated his pain as level ten, but he received Toradol and Norflex intravenously and reported that his pain was a level six out of ten upon discharge. (*Id.*) Dr. Clark diagnosed McConnell with lumbar strain and chronic low back pain (R. at 424) and an X ray revealed mild to moderate scoliosis (R. at 429). Dr. Clark prescribed Flexeril and Mobic to ease McConnell's back pain. (R. at 426.)

Two days later, McConnell returned to Dr. Molony, who noted that the range of motion in McConnell's lumbar spine was "markedly reduced." (R. at 470.) McConnell had been taking more than his prescribed dosage of Lortab and apparently used all of the pills before his prescription could be refilled, so Dr. Molony gave him ten Percocet pills. (*Id.*) Dr. Molony directed McConnell to obtain an MRI, which he did on January 22, 2008.

On February 8, 2008, Dr. Molony observed that the MRI revealed a "fairly large disc herniation" that was causing "extrensic [sic] pressure over the nerve root and thecal sac." (Id.) Dr. Molony refilled McConnell's Lortab and Xanax prescriptions and prescribed Elavil, an antidepressant, though his notes do not state his reason for this new prescription. McConnell visited Dr. Molony on several other occasions throughout 2008 and 2009, continuing to complain of back pain, but Dr. Molony's progress notes from those visits do not contain any relevant new information.

Several physicians and experts, both treating and non-treating, assessed McConnell's residual functional capacity ("RFC"). On November 28, 2007, Richard Surrusco, M.D., reviewed McConnell's records on behalf of the state agency. Dr. Surrusco opined that McConnell could occasionally lift 50 pounds and could frequently lift 25 pounds. (R. at 398.) According to Dr. Surrusco, McConnell could stand or walk for about six hours in an eight-hour workday, with normal breaks, and could sit for about six hours in an eight-hour workday. (Id.) He could never climb ladders but could occasionally climb stairs, and he could occasionally balance, stoop, kneel, crouch, and crawl. (R. at 399.) Dr. Surrusco also noted McConnell's visual limitations due to blindness in his left eye. Dr. Surrusco found McConnell's statements regarding his symptoms and functional limitations to be partially credible based on the record as a whole. (R. at 403.) On

March 31, 2008, Joseph Duckwall, M.D., conducted another review of the record on behalf of the state agency and, like Dr. Surrusco, found that McConnell was capable of performing medium exertional work. (R. at 434-40.)

Howard Leizer, Ph.D., a psychologist, reviewed McConnell's medical record on behalf of the state agency on March 31, 2008. Dr. Leizer found that McConnell had a medically determinable impairment of anxiety and his statements were partially credible. (R. at 443.) Though Dr. Leizer found that McConnell had some moderate limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation, he concluded that McConnell was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment." (*Id.*)

On September 24, 2009, Dr. Molony completed a Physical Residual Functional Capacity Questionnaire in which he provided check-the-box conclusions without explanations. (R. at 460-64.) Dr. Molony opined that McConnell's pain and other symptoms would occasionally interfere with his attention and concentration. (R. at 461.) McConnell could tolerate moderate work stress. (*Id.*) According to Dr. Molony, McConnell could walk nine city blocks without rest or severe pain, but could only sit for 45 minutes at a time and stand for 30 minutes at a time (*Id.*) and could sit and stand/walk for less than two hours total in an eight-hour workday (R. at 462). Dr. Molony advised that McConnell could

occasionally lift less than ten pounds, should never crouch/squat or climb ladders, and should rarely twist or stoop. (R. at 462-63.) Dr. Molony indicated that McConnell would miss about four days of work per month due to his impairments. (R. at 463.)

At the hearing on April 2, 2010, Ward W. Stevens, M.D., a neurosurgeon, testified as an independent ME. Dr. Stevens noted that in November 2009, McConnell underwent an electromyography ("EMG") study at the University of Virginia Medical Center, and the results were normal; thus, he speculated that McConnell's disc herniation had improved. (R. at 86-87.) Dr. Stevens opined that McConnell probably does experience back and leg pain that may affect his work activity, but concluded that he could perform light work with some modifications. (R. at 87-92.) Dr. Stevens testified that McConnell's left-eye blindness would not pose any significant limitations, except that he should avoid dangerous machinery or unprotected heights. (R. at 91.)

Ann Marie Cash, an independent VE, also testified at the hearing on April 2, 2010. The ALJ posed a hypothetical scenario in which he described an individual with the RFC to perform light work with some modifications. (R. at 102.) The VE indicated that a person of McConnell's age, education, and work experience with the stated RFC could not work as a coal hauler but could work as a surveyor helper. (R. at 102-03.) Additionally, the VE testified that a person with the stated

RFC could work as a kitchen helper, housekeeper, or janitor/building cleaner, and all of these jobs existed in significant numbers in the national economy. (R. at 103-04.)

The ALJ found that McConnell met the insured status requirements through March 31, 2008, had not engaged in substantial gainful activity since the alleged onset date, and had the severe impairments of degenerative disc disease, left eye blindness, anxiety, and depression. The ALJ further found that none of McConnell's impairments met or medically equaled a listed impairment. The ALJ found that McConnell had mild restriction in activities of daily living and moderate difficulties in social functioning and concentration, persistence or pace. The ALJ determined that McConnell could perform a range of light work with some physical restrictions. He should not use computer screens because of his visual impairment, and his mental impairments would limit him to simple, unskilled work. The ALJ found that McConnell's claims regarding the intensity, persistence, and limiting effects of his pain and other symptoms were not totally credible. The ALJ gave Dr. Molony's opinion little weight because it was based largely on subjective complaints and was not supported by objective evidence. Finding the state agency doctors' RFC assessment to be too rigorous for McConnell's condition, the ALJ agreed with Dr. Stevens that McConnell possessed the RFC to do light work. The ALJ concluded that McConnell could

perform his past relevant work as a survey helper, as well as several other jobs, and thus was not disabled.

Following the ALJ's decision, McConnell submitted additional evidence to the Appeals Council consisting of a prescription for a cane, records of additional visits to Dr. Molony in 2010 and 2011, and an additional RFC assessment form completed by Dr. Molony. McConnell continued to complain of back pain to Dr. Molony, but the additional documents contained no noteworthy developments. The Appeals Council indicated that it considered this newly submitted evidence but found that the additional evidence did not provide a basis for changing the ALJ's decision.

McConnell contests the ALJ's decision, arguing that it is not supported by substantial evidence because the ALJ failed to give proper weight to the opinion of Dr. Molony, his treating physician. McConnell further argues that the ALJ erred in not ordering a neurological consultative examination. McConnell also asserts that the ALJ failed to adequately evaluate his visual impairment. Finally, McConnell contends that the evidence submitted to the Appeals Council after the ALJ's decision contradicts the ALJ's conclusions.

The Commissioner argues that the ALJ fully considered the record and properly applied the law in determining that McConnell retained the RFC to perform work that existed in significant numbers in the national economy. The

Commissioner contends that substantial evidence supports the ALJ's decision not to afford Dr. Molony's opinion controlling weight and further asserts that the ALJ fully developed the record.  The Commissioner argues that the ALJ properly accounted for McConnell's visual impairment, which has existed since birth, in concluding that McConnell could return to his past work as a survey helper or to the other positions identified by the VE.  Finally, the Commissioner argues that the new evidence submitted by McConnell is cumulative and would not change the ALJ's decision.

### III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  The standard for disability is strict.  The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process.  The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment;

(3) has a condition that meets or medically equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.* The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

I must review the denial of benefits under the Act to ensure that the ALJ's findings of fact "are supported by substantial evidence and [that] the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). I must not reweigh the evidence or make credibility determinations because those functions are left to the ALJ. *Johnson*, 434 F.3d at 653. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id*. (alteration in original) (internal quotation marks and citation omitted).

McConnell first contests the ALJ's decision on the ground that the ALJ failed to give proper weight to the opinion of Dr. Molony, his treating physician. An ALJ is required to weigh medical opinions based on: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Id.* at 654 (citing 20 C.F.R. § 404.1527 (2005)). While "[c]ourts often accord greater weight to the testimony of a treating physician," *id.* (internal quotation marks and citation omitted), the ALJ is not required to do so "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ must "give good reasons in [the] notice of determination or decision for the weight [he or she] give[s] [the] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Here, the ALJ expressly stated that he gave little weight to Dr. Molony's opinions because they were based almost entirely on subjective complaints, were not supported by objective medical findings, and in some respects contradicted other evidence of record. As the ALJ accords medical opinions weight based, in part, on their supportability in the record and consistency with the record as a

whole, the ALJ was well within his discretion in declining to consider Dr. Molony's opinions. Moreover, Dr. Molony provided no explanations for the boxes he checked on the two RFC assessments he completed. Such check-the-box assessments without explanatory comments are not entitled to great weight, even when completed by a treating physician. *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). In accordance with the regulations, the ALJ provided good reasons for why he gave little weight to Dr. Molony's opinions.

  McConnell next argues the ALJ's duty to fully develop the record required him to order a neurological consultative examination. While an ALJ does have a duty to develop the record, it is the claimant who bears the burden of proving he is entitled to benefits. *Bell v. Chater*, No. 95-1089, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (unpublished); *Toney v. Shalala*, No. 94-1008, 1994 WL 463427, at *2 (4th Cir. Aug. 29, 1994) (unpublished). The ALJ in this case continued the hearing so that McConnell could visit the University of Virginia Medical Center to undergo additional tests at a minimal cost. McConnell did travel to the University of Virginia Medical Center, but he obtained only one test, the EMG, while he was there. McConnell had the opportunity to undergo further testing in order to supplement the record, but for whatever reason, he did not do so. The ALJ was not required to continue the hearing yet again to order further examinations. The ALJ developed a reasonably complete record that enabled him to render a decision on

whether McConnell was entitled to benefits. That is all the ALJ was required to do. McConnell failed to carry his burden of persuasion.

McConnell also contends that the ALJ failed to adequately account for his visual limitations. I find this contention to be without merit. McConnell has been blind in his left eye since birth, yet he worked for most of his adult life, including as a survey helper, coal hauler, and bricklayer. He has a driver's license and drives several times per week. The ALJ questioned the ME about McConnell's visual impairment, and the ALJ indicated in his RFC assessment that McConnell should not use computer screens. I find that the ALJ adequately considered McConnell's visual impairment and properly concluded that the impairment would not prevent McConnell from performing the jobs identified by the VE.

Finally, McConnell argues that the additional evidence he submitted to the Appeals Council contradicted the ALJ's decision and warrants a remand. The Appeals Council, and this court, must consider new and material evidence submitted after the ALJ's decision that is relevant to the period on or before the date of the ALJ's decision. 20 C.F.R. § 416.1470(b) (2012); *see Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (holding that where Appeals Council considers additional evidence and incorporates it into the record, reviewing court must also consider the new evidence as part of the record.). This means that I must review the ALJ's decision in light of evidence that the ALJ

never considered, *see Ridings v. Apfel*, 76 F. Supp. 2d 707, 709 (W.D. Va. 1999), while also refraining from making factual determinations, *McGinnis v. Astrue*, 709 F. Supp. 2d 468, 471 (W.D. Va. 2010).  Therefore, my review of the new evidence is limited to determining whether it "is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports." *Davis v. Barnhart*, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (internal quotation marks and citations omitted).  If the new evidence creates a conflict, then a remand is warranted so that the Commissioner can weigh and resolve the conflicting evidence. *Id.*

I find that the additional evidence submitted to the Appeals Council does not contradict the ALJ's decision.  The newly submitted evidence is cumulative of evidence that was already in the record and contains no new information that would likely have changed the ALJ's decision.  The evidence merely indicates that McConnell continued to complain of back pain and received a prescription for a cane that he had already been using.  Dr. Molony's second RFC assessment contained the same opinions contained his early RFC assessment, which was considered by the ALJ.  I find that the ALJ would have rejected this second RFC assessment for the same reasons that he rejected Dr. Molony's first RFC assessment — the opinions expressed in the check-the-box form were based primarily on subjective complaints and unsupported by objective medical findings.

The evidence submitted after the ALJ's decision does not provide a basis for remanding the case.

IV

For the foregoing reasons, I find that the Commissioner's decision is supported by substantial evidence. The plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: March 25, 2013

/s/ James P. Jones
United States District Judge